# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL K. ANGELOFF, et al.,** | : | Civil Action No. 1:09-CV-2169 |
| **Plaintiffs** | : | (Chief Judge Kane) |
| v. | : | |
| **JAMES E. DEARDORFF, JR., et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the Court are Defendant Wells Fargo's motion to dismiss and brief in support. (Doc. Nos. 54, 55.) For the reasons that follow, the Court will grant Defendant's motion to dismiss.

**I.    BACKGROUND**

    **A.    Factual Background**[1]

In July 2008, Plaintiffs were facing a sheriff's sale of their home located in Enola, Pennsylvania. (Doc. No. 40 ¶ 18.) Defendants James Deardorff and Joanne Seeley ran a program which offered "consumer credit counseling" and ways to prevent a sheriff's sale of a home ("the Program"). (Id. ¶ 20.) In response to flyers and other solicitations regarding the Program, Plaintiffs met with Seeley and Deardorff on July 17, 2008. (Id. ¶ 24.) Plaintiffs agreed to enter the Program, and on August 14, 2008, Plaintiffs met with Seeley and Deardorff for a settlement conference. (Id. ¶¶ 26, 35.) Plaintiffs believed they were "transferring their equity to

---

[1] In accordance with the standard of review for motions to dismiss, the Court takes all factual allegations in the complaint as true.

1

someone else so that they would receive money to take care of their bills, that they would receive credit counseling to assist them and that they would remain in ownership of their home." (Id. ¶ 43.) Instead, Plaintiffs signed over a deed to Joseph Topper. (Doc. No. 1-5.) The deed stated that Plaintiffs received $184,000 in consideration. (Id.) Topper entered into a mortgage loan with Wells Fargo for $166,410 to purchase the property from Plaintiffs. (Doc. No. 1-6.) Although the settlement statement indicated that Plaintiffs were due $101,905.86 in cash from the sale, Plaintiffs received only $1,200 and were given a $9,546 credit. (Doc. No. 40 ¶ 46.) The remaining moneys were withheld by Seeley and Deardorff. (Id. ¶ 47.)

Also on August 14, 2008, Plaintiffs entered into an "Installment Contract" with Topper. (Doc. No. 1-9.) According to the contract, Plaintiffs agreed to make scheduled payments to Topper, Seeley, or Deardorff. (Id. ¶¶ 50, 51; Doc. No. 1-9.) Plaintiffs missed a payment on January 1, 2009, and on January 14, 2009 Seeley gave Plaintiffs notice to leave the premises. (Doc. No. 40 ¶ 53.) Plaintiffs continue to reside at the home, and Wells Fargo is continuing foreclosure proceedings on the property. (Id. ¶ 63.)

### B. Procedural Background

Plaintiffs filed a complaint in this action on November 5, 2009. (Doc. No. 1.) On June 14, 2010, Plaintiffs filed an amended complaint, alleging eight causes of action against Wells Fargo. (Doc. No. 40.) On August 16, 2010, Wells Fargo filed the present motion to dismiss Plaintiffs' amended complaint (Doc. No. 54) and a brief in support (Doc. No. 55). In response, Plaintiffs have filed a one-page reply which states in full, "The paragraph calls for a conclusion of law for which no response is necessary." (Doc. No. 58 at 1.) Plaintiffs have filed no further response.

## II. STANDARD OF REVIEW

In analyzing a complaint under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The plaintiff still must provide more than a formulaic recitation of a claim's elements that amounts to mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). Additionally, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotations and citations omitted).

## III. DISCUSSION

Wells Fargo claims that for each count asserted against it, Plaintiffs have failed to plead sufficient facts to state a claim for relief. The Court will address each count against Wells Fargo in turn.

### A. Federal and State Due Process

In Count 1, Plaintiffs allege that Wells Fargo violated 42 U.S.C. § 1983 because it deprived Plaintiffs of their property rights in violation of the Fourteenth Amendment. (Doc. No. 40 ¶ 68.) To state a claim under § 1983, Plaintiffs must establish two jurisdictional requisites. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 946 (1982). First, Plaintiffs must allege a violation of a right "secured by the Constitution and laws of the United States." Id. Second,

3

Plaintiffs must show that the alleged deprivation was caused by a person acting under color of state law. Id. Wells Fargo contends that Plaintiffs' federal due process claim must fail because a mortgage foreclosure action is not state action for purposes of a § 1983 claim. (Doc. No. 55 at 8.) The Court agrees.

Plaintiffs complaint does not assert that Wells Fargo was acting under color of state law. Additionally, many courts have recognized that a private lender's actions during foreclosure proceedings cannot constitute state action in violation of § 1983 or the Fourteenth Amendment. See Jacobowitz v. M&T Mortg. Corp., 372 F. App'x 225, 227 (3d Cir. 2010) (finding district court's dismissal of § 1983 claims against bank proper because "the complaint does not . . . contain any allegations suggesting that M&T was acting under color of state law in effectuating the foreclosure"); Earnest v. Lowentritt, 690 F.2d 1198, 1201-02 (5th Cir. 1982) (finding that, unlike an *ex parte* situation, "initiation of foreclosure proceedings pursuant to a mortgage implicates no similar 'authority of state law'" and that to hold otherwise would "transform every foreclosure action between private parties into state action of constitutional dimensions") (citations omitted); Zebrowski v. Wells Fargo Bank, N.A., 657 F. Supp. 2d 511, 522 (D.N.J. 2009) (dismissing plaintiffs' § 1983 claim against bank for failure to plead adequate state action). Because Plaintiffs have not alleged any facts suggesting that Wells Fargo deprived Plaintiffs of due process while acting under color of state law, Count 1 fails against Wells Fargo.

Plaintiffs' claim for violations of the Pennsylvania Constitution also fails. In Count 2, it appears that Plaintiffs are attempting to assert a state due process claim, alleging only that "Wells Fargo's action to use Pennsylvania Law to deprive Plaintiff of their property is due under the color of state law" and "Wells Fargo has not given Plaintiff proper notice, due process, and the

ability to be heard on these claims." (Doc. No. 40 ¶¶ 74, 75 [sic]².)  These conclusory statements are insufficient to state a claim for relief.  As with the § 1983 claim, Plaintiffs fail to make any allegations suggesting that Wells Fargo was acting under color of state law.   Additionally, Plaintiffs seek only monetary damages for the alleged violation of the Pennsylvania Constitution.  However, there is no private cause of action for damages arising out of the Pennsylvania Constitution.  See Jones v. City of Philadelphia, 890 A.2d 1188, 1208, 1215-16 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution.").  Therefore, Plaintiff's claim against Wells Fargo for violations of the Pennsylvania Constitution must be dismissed.

B.      **Real Estate Settlement Procedures Act**

Next, in Counts 3, 2 [sic],³ and 3 [sic], Plaintiffs allege that Wells Fargo violated three provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.  Specifically, Plaintiffs assert claims under § 2607(a), which prohibits fees or kickbacks for business referrals incident to a real estate settlement; § 2607(b), which prohibits splitting unearned real estate settlement fees with a third party; and § 2603(a), which requires completion of a uniform settlement statement by the person conducting the settlement.  (Doc. No. 40 ¶¶ 79, 89, 102.)  Wells Fargo argues that Plaintiffs lack standing to bring RESPA claims against it

---

² The Court notes that Plaintiffs' amended complaint contains two paragraphs labeled as paragraph number 75.  (Doc. No. 40.)

³ Plaintiffs' amended complaint adds two additional counts.  (Doc. No. 40.)  However, Plaintiffs neglected to renumber most of the original claims, causing many counts to be misnumbered.

because they were not borrowers of Wells Fargo. (Doc. No. 55 at 13.) According to Wells Fargo, only borrowers have standing to bring claims under RESPA. (Id.)

In Alston v. Countrywide Financial Corp., 585 F.3d 753 (3d Cir. 2009), the Third Circuit stated that "RESPA only authorizes suits by individuals who receive a loan accompanied by a kickback or unlawful referral." Id. at 763 (citing In re Carter, 553 F.3d 979, 989 (6th Cir. 2009)). Here, Plaintiffs have failed to assert that they received a loan from Wells Fargo. In fact, Plaintiffs state that they were the sellers of the property. (Doc. No. 40 ¶¶ 46, 50.) Because there is no allegation that Plaintiffs received a loan from Wells Fargo, the Court finds that Plaintiffs lack standing to bring claims under RESPA against Wells Fargo. Plaintiffs have failed to respond to Wells Fargo's argument with any basis for the Court to conclude that they have standing. Therefore, Plaintiffs' claims against Wells Fargo under RESPA must be dismissed.[4]

### C. Criminal Statute

In Count 3 [sic], Plaintiffs also assert a claim under 18 U.S.C. § 1010, a criminal statute that prohibits making false or fraudulent statements to the Department of Housing and Urban Development. (Doc. No. 40 ¶ 103.) However, § 1010 does not, on its face, provide a private right of action. Additionally, courts have refused to read an implied right of action into the statute, and Plaintiffs have not made any argument that such a private right exists. See Belle v. First Franklin, No. 08-11465, 2010 WL 3488658 at *4 (E.D. Mich. Sept. 3, 2010) ("Plaintiffs have not established that [§ 1010] creates a private cause of action upon which a plaintiff may

---

[4] The Court notes that, even if Plaintiffs had standing to assert claims under 12 U.S.C. § 2607 against Wells Fargo, the statute of limitations would have run on the claims. RESPA requires that actions brought pursuant to § 2607 be asserted within one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614. The closing in this case occurred August 14, 2008. Plaintiffs did not file suit until November 5, 2009.

rely in civil litigation."); Johl v. Johl, 556 F. Supp. 5, 7 (D.Conn. 1981) ("It is clear that [§ 1010] cannot serve to provide the plaintiff, a private citizen, with a cause of action in this civil case."). Thus, Plaintiffs' claim against Wells Fargo under § 1010 must be dismissed.

### D. Internal Revenue Code

In Count 5 [sic], Plaintiffs assert a claim against Wells Fargo under the Internal Revenue Code, 26 U.S.C. § 7434 for failing to file a proper 1099-s form. Section 7434 allows for a private cause of action to be raised by a person against someone who "willfully files a fraudulent information return with respect to payments purported to be made to [that] other person." 26 U.S.C. § 7434(a). As a preliminary matter, Plaintiffs do not allege that Wells Fargo filed a fraudulent information return. Instead, Plaintiffs assert only that Wells Fargo "had a responsibility to file a 1099-s" and that "the 1099-s form filed with the Internal Revenue Service by defendants J. Seeley, KMF, and Keegan would be fraudulent." (Doc. No. 40 ¶¶ 130, 133.) Additionally, Wells Fargo contends that § 7434 does not apply to 1099-s forms because a 1099-s form is not an "information return" for purposes of the statute. (Doc. No. 55 at 20.) Those "information returns" covered by § 7434 are defined by 26 U.S.C. § 6724(d)(1)(A). 26 U.S.C. § 7434(f). Section 6724(d)(1)(A) includes nine different types of returns, none of which involves a return relating to proceeds from real estate transactions. See 26 U.S.C. § 6724(d)(1)(A). Therefore, Count 5 [sic] also fails to state a cognizable claim against Wells Fargo and must be dismissed.

### E. Negligence and Negligent Misrepresentation

In Counts 8 [sic] and 11 [sic], Plaintiffs allege claims of negligence and negligent misrepresentation against Wells Fargo. As a preliminary matter, Plaintiffs' conclusory

7

allegations that Seeley acted as an agent of Wells Fargo are devoid of any facts to support such a theory of liability. The three basic elements of agency in Pennsylvania are: "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Basile v. H& R Block, Inc., 761 A.2d 1115, 1120 (Pa. 2000). The party asserting the existence of an agency relationship bears the burden of establishing the relationship. B&L Asphalt Indus., Inc. v. Fusco, 753 A.2d 264, 269 (Pa. Super. Ct. 2000). A plaintiff asserting agency "need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed." Id. Here, Plaintiffs have failed to allege any facts that would allow the Court to infer even an implied intention to create an agency relationship

Further, under Pennsylvania law, claims of negligence and negligent misrepresentation require a showing that Wells Fargo owed Plaintiffs a duty recognized by law. See Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009). Wells Fargo contends that Plaintiffs have failed to show any legal or factual basis for their claim that Wells Fargo owed them a duty of care. (Doc. No. 55 at 23, 24.) It is clear from the amended complaint that Plaintiffs were the sellers of the property and were not borrowers of Wells Fargo. (Doc. No. 40 ¶¶ 44, 46.) Instead, Topper took out the Wells Fargo mortgage. (Doc. No. 1-6.) As a result, Wells Fargo had no relationship with Plaintiffs and owed them no duty. Because Plaintiffs have failed to allege that Wells Fargo owed Plaintiffs a duty recognized by law, their claims of negligence and negligent misrepresentation must be dismissed against Wells Fargo.

## IV. Conclusion

Based on the foregoing analysis, the Court will grant Defendant Wells Fargo's motion to dismiss. (Doc. No. 54.) An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL K. ANGELOFF, et al.,** | : | Civil Action No. 1:09-CV-2169 |
| **Plaintiffs** | : | (Chief Judge Kane) |
| v. | : | |
| **JAMES E. DEARDORFF, JR., et al.,** | : | |
| **Defendants** | : | |

# ORDER

**NOW**, on this 23rd day of November 2010, upon consideration of Defendant Wells Fargo's motion to dismiss (Doc. No. 54), and for the reasons set forth in the accompanying memorandum, it is **HEREBY ORDERED THAT**:

1. Defendant Wells Fargo's motion to dismiss (Doc. No. 54) is **GRANTED**.

2. Counts 1, 2, 3, 2 [sic], 3 [sic], 5 [sic], 8 [sic], and 11 [sic][1] of Plaintiffs' amended complaint (Doc. No. 40), are **DISMISSED** against Defendant Wells Fargo.

3. Defendant Wells Fargo is discharged from further liability in this matter and is **DISMISSED, WITH PREJUDICE**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

---

[1] The Court notes that most of the counts in Plaintiffs' amended complaint are misnumbered.